IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

|  |  |  |
|---|---|---|
| VIRGINIA URANIUM, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 4:15-cv-31-JLK-RSB |
| v. | ) ) ) | Judge Kiser |
| TERRY MCAULIFFE, *et al.*, | ) ) | Magistrate Judge Ballou |
| Defendants. | ) ) ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO THE ROANOKE
RIVER BASIN ASSOCIATION AND DAN RIVER BASIN
ASSOCIATION'S MOTION FOR LEAVE TO INTERVENE**

September 21, 2015

Charles J. Cooper\*
Michael Weitzner, Bar No. 45049
Michael W. Kirk\*
John D. Ohlendorf\*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com

\**Appearing pro hac vice*

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

                                                     **Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION .....................................................................................................................1

ARGUMENT .............................................................................................................................1

I.      The River Basin Associations Have No Right To Intervene Because the Commonwealth Defendants Fully and Adequately Represent Any Interest in this Litigation that They May Possess. ...................................................................................2

        A.     The Fourth Circuit's Decision in *Stuart* Requires the River Basin Associations To Make a "Very Strong Showing" that the Commonwealth Defendants Do Not Adequately Represent Them, and the Associations Do Not Even Claim To Have Satisfied this Burden. ...............................................................................2

        B.     The "Unique" Argument Raised by the River Basin Associations Lacks Any Merit, Mischaracterizes Plaintiffs' Prayer for Relief, and Only Serves To Underscore the Extent to which the Commonwealth Itself Is Best Positioned To Defend Its Ban on Uranium Mining. ...................................................................6

        C.     The River Basin Associations' Reliance on In Re Sierra Club Is Misplaced. ........10

II.     The River Basin Associations' Motion for Permissive Intervention Should Be Denied. ....................................................................................................................12

CONCLUSION ........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                                  **Page**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) ............................................................... 4, 9

*Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010) ..................................................... 7

*Bond v. United States*, 131 S. Ct. 2355 (2011) ................................................................................ 9

*Brown v. Plata*, 131 S. Ct. 1910 (2011) ........................................................................................... 7

*Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*,
  51 F. Supp. 972 (D. Mass. 1943) ............................................................................................ 14, 15

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ................................................................. 2, 12

*Duberry v. District of Columbia*, 2015 WL 3413526 (D.D.C. May 28, 2015) ............................... 7

*Griffin v. County Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218 (1964) ...................................... 7

*Hoots v. Pennsylvania*, 672 F.2d 1133 (3d Cir. 1982) .................................................................. 13

*Horne v. Flores*, 557 U.S. 433 (2009) ............................................................................................. 8

*In re Sierra Club*, 945 F.2d 776 (4th Cir. 1991) ..................................................................... 10, 12

*James City Cnty. v. EPA*, 131 F.R.D. 472 (E.D. Va. 1990) .......................................................... 14

*Kane Cnty. v. United States*, 597 F.3d 1129 (10th Cir. 2010) ...................................................... 13

*Korioth v. Briscoe*, 523 F.2d 1271 (5th Cir. 1975) ....................................................................... 14

*Lee v. Virginia Bd. of Elections*, 2015 WL 5178993 (E.D. Va. Sept. 4, 2015) ....................... 12, 13

*McHenry v. Comm'r*, 677 F.3d 214 (4th Cir. 2012) ...................................................................... 14

*Milliken v. Bradley*, 433 U.S. 267 (1977) ....................................................................................... 7

*National Wildlife Fed'n v. Ruckelshaus*, 99 F.R.D. 558 (D.N.J. 1983) ........................................ 14

*New York v. United States*, 505 U.S. 144 (1992) ........................................................................... 7

*NRDC v. New York State Dep't of Envtl. Conservation*, 834 F.2d 60 (2d Cir. 1987) .................... 5

*Peterson v. United States*, 41 F.R.D. 131 (D. Minn. 1966) ........................................................... 5

*Printz v. United States*, 521 U.S. 898 (1997) ............................................................................. 8, 9

*Public Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197 (1st Cir. 1998) ................................. 9

*Richman v. First Woman's Bank*, 104 F.3d 654 (4th Cir. 1997) .................................................... 2

*Strahan v. Coxe*, 127 F.3d 155 (1st Cir. 1997) ............................................................................... 7

*Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013) ........................................................................ *passim*

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971) ................................................ 7

*Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991) ........................................................................ 1, 2

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) .............................................................. 11

*Tutein v. Daley*, 43 F. Supp. 2d 113 (D. Mass. 1999) ...................................................................13

*United Guar. Residential Ins. Co. of Iowa v. Philadelphia Sav. Fund Soc'y*,
    819 F.2d 473 (4th Cir. 1987) ..................................................................................................11

*United States Postal Serv. v. Brennan*, 579 F.2d 188 (2d Cir. 1978) .......................................12, 13

*United States v. City of New York*, 179 F.R.D. 373 (E.D.N.Y. 1998) ...........................................14

*United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984) ...........................4

*United States v. South Bend Cmty. Sch. Corp.*, 692 F.2d 623 (7th Cir. 1982) ............................4, 9

**Statutory Provisions and Rules**

FED. R. CIV. P. 24(a)(2) ...............................................................................................................1, 2

FED. R. CIV. P. 24(b)(1)(B) ..........................................................................................................2, 12

FED. R. CIV. P. 24(b)(3) ................................................................................................................2, 12

VA. CODE § 45.1-181 .........................................................................................................................7

VA. CODE § 45.1-283 .........................................................................................................................8

**Other**

7C CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE (3d ed.).......................5

# INTRODUCTION

Rule 24(a)(2) allows an outsider to intervene as of right in ongoing litigation only if the "existing parties" do not "adequately represent [its] interest." The Fourth Circuit recently held that "where a proposed intervenor's ultimate objective is the same as that of an existing party, the party's representation is presumptively adequate." *Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013). What is more, "where the party who shares the intervenor's objective is a government agency, the intervenor has the burden of making a *strong showing* of inadequacy." *Id.* (emphasis added). That strong presumption of adequate representation applies with full force here. The defendant state officials in this case are represented by the Virginia Attorney General's office, and the prospective intervenors, the Roanoke River Basin Association and the Dan River Basin Association (together, the "River Basin Associations")—by their own telling—share with the Commonwealth defendants the same ultimate goal of "vigorous[ly] defen[ding] the challenged statute." Mem. of Law in Supp. of Mot. to Intervene at 8 (Sept. 4, 2015), Doc. 41 ("Intervention Brief"). But the River Basin Associations do not make the "exacting showing of inadequacy" required by *Stuart*, 706 F.3d at 351—and indeed, they do not even attempt to do so. Accordingly, their motion to intervene as of right must be denied. And because intervention would prejudice the existing parties' interests with no appreciable benefit, permissive intervention should also be denied.

# ARGUMENT

Federal Rule of Civil Procedure 24, as relevant here, provides two paths through which a third party can intervene in a case that implicates his interests. First, under Rule 24(a)(2), an applicant can intervene in a lawsuit "as of right" if "the applicant can demonstrate: (1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired

1

because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991). With respect to each of these elements, "a would-be intervenor bears the burden of demonstrating to the court a right to intervene." *Richman v. First Woman's Bank*, 104 F.3d 654, 658 (4th Cir. 1997). Second, Rule 24(b)(1)(B) allows "permissive intervention" by a party who "has a claim or defense that shares with the main action a common question of law or fact." But "[e]ven if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). In exercising that discretion, Rule 24(b) expressly provides that the Court should take into account "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

The River Basin Associations seek both intervention of right and permissive intervention. But binding Fourth Circuit case law squarely dictates that they have no right to intervene. And principles of adjudicatory efficiency and fairness counsel this Court to exercise its discretion to deny them permissive intervention.

I. **The River Basin Associations Have No Right To Intervene Because the Commonwealth Defendants Fully and Adequately Represent Any Interest in this Litigation that They May Possess.**

   A. **The Fourth Circuit's Decision in *Stuart* Requires the River Basin Associations To Make a "Very Strong Showing" that the Commonwealth Defendants Do Not Adequately Represent Them, and the Associations Do Not Even Claim To Have Satisfied this Burden.**

The River Basin Associations say that this "lawsuit threatens to adversely impact the special resources that [they] have committed to protect on behalf of their members." Intervention Brief 6. Even if that is so, Rule 24(a) gives them no right to intervene in this case if "existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). And where prospective

2

intervenors "share the same ultimate objective as the existing defendants" in a case and "those defendants are represented by a government agency," the government's "representation is presumptively adequate" under Rule 24(a)(2). *Stuart*, 706 F.3d at 350, 352. To rebut that presumption of adequate representation, the "putative intervenor must mount a strong showing of inadequacy." *Id*. at 352. The River Basin Associations do not even attempt to make such a showing. Accordingly, the Fourth Circuit's controlling decision in *Stuart* is fatal to their claim that they have a right to intervene in this case.

In *Stuart*, several medical doctors and abortion clinics sued a number of North Carolina state officers in their official capacities seeking to enjoin the enforcement of the State's recently-enacted pre-abortion fetal ultrasound law.[1] After the suit had been filed, "a group of pro-life doctors, former abortion patients, and pregnancy counseling centers" sought to intervene of right, citing their unique perspective "as women who have experienced the effects of the procedure first-hand and doctors and medical centers who provide care to pregnant women." *Id.* at 348, 352. The district court denied intervention, and the Fourth Circuit affirmed.

The Court of Appeals explained why intervention as of right is rarely, if ever, appropriate in cases where government officials are defending a law against a constitutional challenge:

> [I]t is among the most elementary functions of a government to serve in a representative capacity on behalf of its people. In matters of public law litigation that may affect great numbers of citizens, it is the government's basic duty to represent the public interest. And the need for government to exercise its representative function is perhaps at its apex where, as here, a duly enacted statute faces a constitutional challenge. In such cases, the government is simply the most natural party to shoulder the responsibility of defending the fruits of the democratic process.

---

[1] The River Basin Associations leave the impression that unlike this case (and unlike *In re Sierra Club*, discussed below), *Stuart* did not involve a claim for injunctive relief. Intervention Brief 8. That is not so; as here, the plaintiffs in *Stuart* sought "an injunction preventing enforcement of the [challenged] Act." 706 F.3d at 348.

3

*Id.* at 351.

Indeed, the Fourth Circuit noted that "when a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government." *Id.* Accordingly, where "[b]oth the [defendant] government agency and the would-be intervenors want the statute to be constitutionally sustained," a "putative intervenor must mount a strong showing" that the government does not adequately represent its interest in defending the statute. *Id.* at 352. As *Stuart* recognizes, this rule accords with the conclusion of "every circuit to rule on the matter." *Id.* at 351; *see, e.g.*, *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) ("In the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." (quotation marks omitted)); *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984) (Friendly, J.) (requiring "a strong affirmative showing that the sovereign is not fairly representing the interests of the applicant"); *United States v. South Bend Cmty. Sch. Corp.*, 692 F.2d 623, 627 (7th Cir. 1982) ("Adequate representation . . . is . . . to be presumed where, as here, there has been no showing of gross negligence or bad faith.").

So too here. As in *Stuart*, the existing defendants in this case are "state officials represented by the . . . Attorney General." 706 F.3d at 348. As in *Stuart*, those state defendants share with the River Basin Associations "precisely the same goal: to uphold the Act as constitutionally permissible." *Id.* at 349; *see also* Intervention Brief 8 ("Local Intervenors recognize that their interests, with respect to the claim for declaratory relief, are likely to converge with the Commonwealth Defendants' vigorous defense of the challenged statute."). As in *Stuart*, there is a strong presumption "that the Attorney General [is] adequately representing [the River Basin Associations'] interests." *Id.* at 350.

4

It makes no difference if, as the River Basin Associations claim, they "have an acute interest in this litigation that the Virginia population at large does not share because any potential mining activity undertaken would cause a disproportionate impact on [them]." Intervention Brief 7. The Fourth Circuit held that "stronger, more specific interests do not adverse interests make—and they surely cannot be enough to establish inadequacy of representation since would-be intervenors will nearly always have intense desires that are more particular than the state's (or else why seek party status at all)." *Stuart*, 706 F.3d at 353; *see also NRDC v. New York State Dep't of Envtl. Conservation*, 834 F.2d 60, 61–62 (2d Cir. 1987) ("A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party.").[2]

Accordingly, under *Stuart*'s clear holding, the River Basin Associations must make an "exacting showing of inadequacy" before they are entitled to intervene under Rule 24(a)(2). 706 F.3d. at 351. The closest they come to even *recognizing* this requirement is the unsupported suggestion—in the introductory paragraph of their argument—that "they raise a unique defense . . . that *may* not be 'adequately represented' by the Commonwealth Defendants." Intervention Brief 6 (emphasis added). On its face, this half-hearted suggestion is not "a very strong showing of inadequacy." *Stuart*, 706 F.3d at 351 (quotation marks omitted). Instead of making the showing required by the Fourth Circuit, the River Basin Associations can only speculate that if and when the Court grants the injunctive relief sought by Plaintiffs, "*at [that] point* the interests

---

[2] Nor does it matter that the Commonwealth has not objected to the River Basin Associations' motion to intervene. It is well-settled that "consent of the representatives does not entitle one to intervention as a matter of right." *Peterson v. United States*, 41 F.R.D. 131, 135 (D. Minn. 1966); *see also* 7C CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1909 n.18 (3d ed.) ("If the absentee is adequately represented, he is not entitled to intervene of right even though the representative has consented to the intervention.").

5

of the Commonwealth Defendants and [the River Basin Associations] *may* diverge." Intervention Brief 8 (emphases added). No explanation for how that may occur is provided.[3] *Stuart* compels the denial of the River Basin Association's motion under Rule 24(a).

> **B. The "Unique" Argument Raised by the River Basin Associations Lacks Any Merit, Mischaracterizes Plaintiffs' Prayer for Relief, and Only Serves To Underscore the Extent to which the Commonwealth Itself Is Best Positioned To Defend Its Ban on Uranium Mining.**

The "unique defense" that the River Basin Associations say they will raise if permitted to intervene is their argument that the injunctive relief sought by Plaintiffs would entail the unconstitutional commandeering of State officials to execute federal law. *See* Intervention Brief 7. (citing *New York v. United States*, 505 U.S. 144 (1992)). This argument lacks legal merit, misrepresents the relief Plaintiffs have requested from this Court, and only serves to confirm the truth of *Stuart*'s observation that "when a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government." 706 F.3d at 351.

1. The implications of the Associations' commandeering defense are staggering. Under this argument, *every affirmative federal injunction* that runs against a state official is unconstitutional as a form of federal "commandeering." Injunctions remedying overcrowded prisons, for example, are unconstitutional under this argument, as are injunctions requiring the

---

[3] The River Basin Association may be contending that the hypothesized divergence of interests would arise from the Commonwealth's compliance with this Court's injunction. But if this Court were to enter such an injunction, it would necessarily be because it had concluded that Virginia's ban on uranium mining is preempted and that this form of relief was necessary and appropriate. At that point, the River Basin Associations would be in a position no different from every other individual or group faced with a court decision that has come out differently than they had hoped. A divergence between the interests of the River Basin Associations and the government that surfaces *only after adverse judgment has been entered* cannot justify their intervention in the case; and the potential that a non-party's desire for a particular outcome may be disappointed is not a cognizable interest under Rule 24(a)(2).

6

desegregation of schools. *But see Brown v. Plata*, 131 S. Ct. 1910, 1928–29 (2011); *Griffin v. County Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 233 (1964).

That is not the law. The inherent equitable power of federal courts to enter affirmative injunctive relief against state officers is well-established. *E.g.*, *Milliken v. Bradley*, 433 U.S. 267, 279–88 (1977); *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15–18 (1971); *Griffin*, 377 U.S. at 232–33. Indeed, in *New York v. United States* itself, the Supreme Court *specifically stated* that the commandeering principle it articulated has no application to "the power of federal *courts* to order state officials to comply with federal law" since "the text of the Constitution plainly confers this authority on the federal courts," 505 U.S. at 179 (emphasis in original). In accord, the lower federal courts have repeatedly rejected the "unique" commandeering argument that the River Basin Associations seek to advance. *See, e.g.*, *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068–69 (9th Cir. 2010); *Strahan v. Coxe*, 127 F.3d 155, 168–70 (1st Cir. 1997); *Duberry v. District of Columbia*, 2015 WL 3413526, at *8 (D.D.C. May 28, 2015), *appeal docketed*, No. 15-7062 (June 26, 2015).

2. Even if the constitutional rule against commandeering applied in the context of judicial injunctive relief, it would not apply *here* because Plaintiffs simply are not asking this Court to order Defendants to "force state agencies to engage in a federally mandated permitting process," as the River Basin Associations suggest. Intervention Brief 7. The permitting process is mandated by the Commonwealth, not by federal law or by the injunction that Plaintiffs have asked this Court to enter. Virginia has chosen to regulate *all* mineral mining in the Commonwealth by requiring prospective miners to obtain the permits described in our complaint and summary judgment papers—including the general mining permit, which applies to "any mining operation in Virginia." VA. CODE § 45.1-181. Plaintiffs have not challenged the validity

7

of those state regulatory regimes in this litigation; all that is at issue is the refusal by Defendants to *accept* our applications for permits under these preexisting, unchallenged regulatory regimes—a refusal that is based solely on the Commonwealth's preempted law that bans "any agency of the Commonwealth" from accepting "permit applications for uranium mining." VA. CODE § 45.1-283. And the only relief we have requested is an order putting a stop to Defendants' unconstitutional refusal to accept our applications and process them in good faith, as they would an application to mine any other mineral.

The requested relief would in no way require this Court to issue state mining permits or order Defendants to do so, so long as they cease *refusing* to issue them on unlawful grounds. Far from "a highly-unusual injunction" that would put the parties and this Court "in unchartered [sic] administrative territory," Intervention Brief 2, 7, the relief we have requested is carefully tailored to respect the principle that " 'federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate [federal law] or does not flow from such a violation.' " *Horne v. Flores*, 557 U.S. 433, 450 (2009) (alteration in original) (quoting *Milliken*, 433 U.S. at 282).

To be sure, should this Court strike down Virginia's ban on uranium mining, the Commonwealth may well conclude that more granular regulations of mining safety are needed with respect to uranium mining than those imposed under the current, general mineral mining regime. But if Virginia chooses to respond to an adverse ruling by this Court by enacting uranium mining regulations, *that will be Virginia's choice*.

3. Finally, it is no small irony that the only "unique" argument raised by the River Basin Associations in their intervention papers is one predicated on the "residuary and inviolable sovereignty" of the states. *Printz v. United States*, 521 U.S. 898, 919 (1997) (quoting THE

8

FEDERALIST No. 39, at 245 (J. Madison) (Clinton Rossiter ed. 1961)). To be sure, "[f]idelity to principles of federalism is not for the States alone to vindicate." *Bond v. United States*, 131 S. Ct. 2355, 2364 (2011). But if in the garden-variety case the State itself "is simply the most natural party to shoulder the responsibility of defending the fruits of the democratic process," *Stuart*, 706 F.3d at 351, that is surely doubly true where the basis of the defense is the State's own interest in "remain[ing] independent and autonomous within [its] proper sphere of authority." *Printz*, 521 U.S. at 928; *see Public Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 208 (1st Cir. 1998) ("None of the [proposed intervenors] has propounded any legal argument that [the state officials] are unable or unwilling to make, or that subverts [their] institutional goals.").

Moreover, the fact that the Commonwealth did not itself choose to raise the commandeering argument in its motion to dismiss—apart from what the omission says about the argument's merits—cannot justify intervention. "Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention." *Arakaki*, 324 F.3d at 1086. As in *Stuart*, the Commonwealth's choice to make certain arguments rather than others is nothing more than a "reasonable litigation decision[ ] made by the Attorney General with which [the prospective intervenors] disagree." 706 F.3d at 354–55. "Such differences of opinion cannot be sufficient to warrant intervention as of right," and "the harms that the contrary rule would inflict upon the efficiency of the judicial system and the government's representative function are all-too-obvious." *Id.* at 355; *see also South Bend Cmty. Sch. Corp.*, 692 F.2d at 627 ("[T]hat a proposed intervenor might . . . [take] a different view of the applicable law does not mean that the [government does] not adequately represent its interests in the litigation." (quotation marks omitted) (second alteration in original)).

9

### C. The River Basin Associations' Reliance on *In Re Sierra Club* Is Misplaced.

The River Basin Associations attempt to bolster their motion to intervene as of right by citing *In re Sierra Club*, 945 F.2d 776 (4th Cir. 1991), but that case is not up to the task. In *Sierra Club*, the Fourth Circuit allowed the Sierra Club to intervene as of right in a lawsuit challenging several provisions of South Carolina's hazardous-waste permitting regime. That decision must be read in light of two important considerations that were present in that case but are absent here.

First, the court in *Sierra Club* pointed to several specific ways in which it expected the interests of the State and the Sierra Club to diverge. *Id.* at 780 (while both the Sierra Club and the State sought to defend the regulation at issue from a Commerce Clause challenge—one of several challenges raised by the plaintiffs—there was potential for dispute over "the appropriate disposition of sections of [the] Regulation . . . that may not violate the Commerce Clause" as well as over the various factors "to be weighed in a preliminary injunction analysis"). Second, the Court's sense that the two parties' interests were not aligned was heightened by the very different roles that they were already playing in ongoing state administrative proceedings. The hazardous waste handlers that were the plaintiffs in the federal litigation had already applied for the permits in question under the challenged regulation, and the defendant South Carolina officials were currently *presiding* over a regulatory proceeding in which the Sierra Club was *opposing* the permit request—underscoring the extent to which the interests of the State and of the Sierra Club were not in harmony. *Id.* at 780–81.

Read in light of these two facts, *Sierra Club* stands for nothing more than "the conventional proposition that where the existing party and proposed intervenor seek divergent objectives, there is less reason to presume that the party (government agency or otherwise) will adequately represent the intervenor." *Stuart*, 706 F.3d at 352. Indeed, the two cases that *Stuart*

10

discusses as illustrating this narrow exception to the ordinary presumption of adequacy—*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972), and *United Guaranty Residential Insurance Co. of Iowa v. Philadelphia Savings Fund Society*, 819 F.2d 473 (4th Cir. 1987)—are the very same cases that *Sierra Club* relied upon in concluding that the South Carolina officials were "not . . . adequate representative[s] for Sierra Club." 945 F.2d at 779–80.

In this case, by contrast, the River Basin Associations have not suggested, nor could they, that the Virginia Attorney General's office is pursuing interests that are adverse to or otherwise diverge from their own. Indeed, they go out of their way to praise "the Commonwealth Defendants' vigorous defense of the challenged statute," Intervention Brief 8, and in their brief in support of their proposed motion to dismiss they "incorporate by reference" the Commonwealth's own brief in favor of dismissal, noting that it "ably explain[s]" the bulk of their objections. Mem. of Law in Supp. of Mot. to Dismiss 4, 5 (Sept. 4, 2015), Doc. 43. Moreover, rather than pointing to specific, material issues in the litigation where their interests and Virginia's are likely to come apart, the River Basin Associations only suggest that their interests "may diverge" from the Commonwealth's in some unspecified way *if and after adverse judgment is ultimately entered*. Intervention Brief 7–8. Even that divergence is predicated on their meritless commandeering argument which, as argued above, cannot justify intervention for multiple independent reasons. *See supra* pp. 6–9. It is beyond dispute that the River Basin Associations "share the same objective as the existing government defendants: upholding the constitutionality of the Act." *Stuart*, 706 F.3d at 353. That makes *Sierra Club*'s narrow holding inapposite.

To be sure, there is *dicta* in *Sierra Club* that could be read more broadly. But such a reading would put the *Sierra Club* dicta into inexorable conflict with the holding in *Stuart*, and it

11

therefore must be rejected. For example, *Sierra Club* relied on the fact that the Sierra Club "represent[s] only . . . those who would prefer that few or no new hazardous waste facilities receive permits" and therefore "does not need to consider the interests of all South Carolina citizens." *Id.* at 780. But *Stuart* squarely holds that "stronger, more specific interests do not adverse interests make—and they surely cannot be enough to establish inadequacy of representation since would-be intervenors will nearly always have intense desires that are more particular than the state's (or else why seek party status at all)." 706 F.3d at 353. Given the Fourth Circuit's recent holding in *Stuart*, *Sierra Club* may not be read beyond its narrow holding. And read *only* for its narrow holding, it has no application here.

## II. The River Basin Associations' Motion for Permissive Intervention Should Be Denied.

Though the River Basin Associations have failed to show that they have a right to intervene under Rule 24(a), the Court still "may permit [them] to intervene" if they have put forward a "defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). But even assuming that the Associations "satisf[y] those threshold requirements," this Court "has discretion to deny permissive intervention," *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998), if it concludes that intervention would not provide an appreciable "benefit to the process, the litigants, or the court," *Lee v. Virginia Bd. of Elections*, 2015 WL 5178993, at *4 (E.D. Va. Sept. 4, 2015), or would "unduly delay or prejudice the adjudication of the original parties' rights," FED. R. CIV. P. 24(b)(3). Here, both sets of considerations strongly counsel against allowing permissive intervention.

1. There is little, if any, likelihood that the River Basin Associations "will significantly contribute . . . to the just and equitable adjudication of the legal questions presented" in this case, *United States Postal Serv. v. Brennan*, 579 F.2d 188, 191–92 (2d Cir.

12

1978), largely for reasons already canvassed. To begin, the presence of existing defendants who "are zealously pursuing the same ultimate objectives" as the Associations significantly lessens the potential benefit of allowing them to intervene. *Stuart*, 706 F.3d at 355. Indeed, if "intervention as of right is decided based on the government's adequate representation, the case for permissive intervention diminishes or disappears entirely." *Tutein v. Daley*, 43 F. Supp. 2d 113, 131 (D. Mass. 1999) (citation omitted); *see also Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982) ("[W]here . . . an existing . . . party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous . . . .").

Moreover, the commandeering argument that the River Basin Associations point to as the sole "unique defense" justifying their intervention instead underscores the lack of appreciable benefit in allowing them to intervene. As shown above, the Associations' commandeering argument is devoid of legal merit and is based on a misreading of the injunctive relief sought by our Complaint that is either confused or misleading—hardly the type of argument that presents a likely "benefit to the process, the litigants, or the court." *Lee*, 2015 WL 5178993, at *4. What is more, if there *were* any merit to this type of argument, the existing defendants—represented by the Commonwealth's Attorney General—are ideally placed to robustly vindicate Virginia's sovereign interests. In these circumstances, allowing the River Basin Associations into the case would be little more than "an invitation to any member of the public who holds strong views about the outcome to seek to intervene." *Kane Cnty. v. United States*, 597 F.3d 1129, 1136 (10th Cir. 2010).

Finally, to the extent that the River Basin Associations really do represent a perspective that is distinct from the Commonwealth's and is potentially helpful to this Court's resolution of

13

the case, that perspective can of course be brought to bear through the filing of a brief amicus curiae. As the Fourth Circuit has noted, "[n]umerous cases support the proposition that allowing a proposed intervenor to file an amicus brief is an adequate alternative to permissive intervention." *McHenry v. Comm'r*, 677 F.3d 214, 227 (4th Cir. 2012); *see also Stuart*, 706 F.3d at 355. And denying permissive intervention will not seriously impede the River Basin Associations' purported "acute interests in the subject matter of this litigation," Intervention Brief 1, for an additional reason as well. As noted above, the relief requested here will only *begin* Virginia's preexisting regulatory process, and there is little doubt that the Associations and their members will make their voices heard as that process unfolds. *See Korioth v. Briscoe*, 523 F.2d 1271, 1279 (5th Cir. 1975); *United States v. City of New York*, 179 F.R.D. 373, 379 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 360 (2d Cir. 1999); *National Wildlife Fed'n v. Ruckelshaus*, 99 F.R.D. 558, 561 (D.N.J. 1983).

      2.      The River Basin Associations argue that their "participation in this action will not prejudice any party." Intervention Brief 9. That is not so. *Whenever* an outsider intervenes on the defendant-side of a case, the plaintiff is clearly prejudiced to some degree because he is "left fighting fires on two fronts." *James City Cnty. v. EPA*, 131 F.R.D. 472, 475 (E.D. Va. 1990). Here already, for example, if the River Basin Associations' motion is granted, Plaintiffs will face two motions to dismiss, not one.

     What is more, if allowed to intervene the River Basin Associations will, inevitably, delay final adjudication of the issues raised by the primary parties. As an early case colorfully put the point: "Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair." *Crosby Steam Gage & Valve Co. v.*

14

*Manning, Maxwell & Moore, Inc.*, 51 F. Supp. 972, 973 (D. Mass. 1943). Accordingly, "a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." *Id.*

## CONCLUSION

For each of the forgoing reasons, the River Basin Associations' motion to intervene in his case under either Rule 24(a)(2) or Rule 24(b)(1)(B) should be denied.

September 21, 2015                                    Respectfully submitted,

                                                             s/ Charles J. Cooper
                                                             Charles J. Cooper*
                                                             s/ Michael Weitzner
                                                             Michael Weitzner, Bar No. 45049

                                                            Michael W. Kirk*
                                                            John D. Ohlendorf*

                                                            COOPER & KIRK, PLLC
                                                           1523 New Hampshire Avenue, N.W.
                                                           Washington, D.C. 20036
                                                           (202) 220-9600
                                                           (202) 220-9601 (fax)
                                                           ccooper@cooperkirk.com

                                                               *Appearing *Pro hac vice*

                                                           *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jonathan Duncan Pitchford
Rhodes Beahm Ritenour

Office of the Attorney General of Virginia
900 East Main Street, Room 2130
Richmond, VA 23219

*Counsel for Defendants*


Caleb Adam Jaffee
William Choice Cleveland, IV

Southern Environmental Law Center
201 West Main Street, Suite 14
Charlottesville, VA 22902

*Counsel for Prospective Intervenor-Defendants*


                                                  s/ Charles J. Cooper
                                                  Charles J. Cooper
                                                  COOPER & KIRK, PLLC
                                                  1523 New Hampshire Avenue, N.W.
                                                  Washington, D.C. 20036
                                                  Tel: (202) 220-9600
                                                  Fax: (202) 220-9601
                                                  ccooper@cooperkirk.com

                                                  *Counsel for Plaintiffs*