IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| VIRGINIA URANIUM, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | Case No.: 4:15-cv-00031 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| TERRY MCAULIFFE, et al., ) | By: Hon. Jackson L. Kiser |
| ) | Senior United States District Judge |
| Defendants. ) | |

This matter is before the Court on the Dan River Basin Association's and the Roanoke River Basin Association's Motion to Intervene. The movants and opponents have fully briefed the motion, and I have reviewed the relevant filings and counsel's arguments. For the reasons stated herein, I will deny the motion.

### I.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[1]

This is a suit between Virginia Uranium, Inc., Coles Hill, LLC, Bowen Minerals, LLC, and Virginia Energy Resources, Inc., ("Plaintiffs") and Virginia's Governor, Secretary of Commerce and Trade, Secretary of Natural Resources, and various officials affiliated with the Department of Mines, Minerals, and Energy or the Department of Environmental Quality ("Defendants"). Plaintiffs are entities that either own the land above, or have mining rights to, a large uranium deposit in Pittsylvania County. (Compl. ¶¶ 9–12, Aug. 5, 2015 [ECF No. 1].) Plaintiffs allege that Defendants, in their respective capacities, are responsible for (or have some connection with) the implementation of Va. Code Ann. § 45.1-283. (Id. ¶¶ 13–23.) That statute provides as follows:

---

[1] The facts are recited in the light most favorable to the would-be intervenors, and reasonable inferences are drawn in their favor. See Lake Inv'rs Dev. Grp., Inc. v. Egidi Dev. Grp., 715 F.2d 1256, 1258 (7th Cir. 1983); Mendenhall v. M/V Toyota Maru No. 11, 551 F.2d 55, 56 n.2 (5th Cir. 1977).

> Notwithstanding any other provision of law, permit applications for uranium mining shall not be accepted by any agency of the Commonwealth prior to July 1, 1984, and until a program for permitting uranium mining is established by statute. For the purpose of construing § 45.1-180 (a), uranium mining shall be deemed to have a significant effect on the surface.

Va. Code Ann. § 45.1-283 (Repl. Vol. 2013). Plaintiffs have filed suit for a declaration that the Atomic Energy Act of 1954, 42 U.S.C. § 2011 et seq., as amended, ("AEA") preempts Va. Code Ann. § 45.1-283 and for an injunction forbidding Defendants from following Va. Code Ann. § 45.1-283 and requiring them to process applications to mine uranium. (Compl. ¶ 111.)

The Office of the Attorney General of Virginia represents Defendants, who have moved to dismiss. (Mot. to Dismiss pgs. 1–2, Aug. 24, 2015 [ECF No. 32].) Plaintiffs have moved for summary judgment. (Cross-Mot. for Summ. J., Sept. 11, 2015 [ECF No. 46].) The existing parties have fully briefed these motions, either of which could dispose of the suit.

On September 4, 2015, the Dan River Basin Association and the Roanoke River Basin Association ("the basin associations"), by common counsel from the Southern Environmental Law Center, moved to intervene as parties. (Mot. for Leave to Intervene, Sept. 4, 2015 [ECF No. 40].) They filed an accompanying motion to dismiss and supporting brief. (Basin Ass'ns' Mot. to Dismiss, Sept. 4, 2015 [ECF No. 42]; Mem. of Law in Supp. of Mot. to Dismiss, Sept. 4, 2015 [ECF No. 43].) Plaintiffs oppose intervention (see Pls.' Br. in Opp. to the Mot. for Leave to Intervene, Sept. 21, 2015 [ECF No. 57]), but Defendants do not (see Resp. to Mot. to Intervene, Sept. 18, 2015 [ECF No. 55]).

The basin associations are nonprofit organizations, and their members include Virginia and North Carolina "local governments, non-profit, civic and community organizations, and regional governmental entities," as well as individual citizens. (Mem. of Law in Supp. of Mot. to Intervene pgs. 2–5, Sept. 4, 2015 [ECF No. 41] (hereinafter "Intervention Mem.").) They claim

to have, on their members' behalf, "a clearly defined interest in the preservation and promotion of . . . natural and aquatic resources" that, they assert, will be harmed by runoff from Plaintiffs' potential uranium-mining site. (Mot. for Leave to Intervene pg. 1.) The basin associations have missions "to protect, preserve, and enhance" these resources, and they do so through various environmental, recreational, and educational activities in their respective regions. (Intervention Mem. pgs. 2–5, 6.)

The basin associations claim that their interests in the litigation differ from Defendants'. (Mot. for Leave to Intervene pg. 1.) They add that Plaintiffs' "requested injunctive relief seeks to commandeer state agencies to engage in a permitting process, at which point the interests of [Defendants] and [those of the basin associations] may diverge." (Id.) If made parties, they would move to dismiss on the grounds that the AEA does not preempt Va. Code Ann. § 45.1-283 and that injunctive relief would reflect an unconstitutional federal commandeering of Defendants. (Basin Ass'ns' Mot. to Dismiss pgs. 1–2.)

## II.  STANDARD OF REVIEW

A motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). "[L]iberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" Feller v. Brock, 802 F.2d 722, 729 (4th Cir. 1986) (quoting Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967)); see also Spring Constr. Co. v. Harris, 614 F.2d 374, 377 (4th Cir. 1980). Accordingly, a "district court must accept as true the non-conclusory allegations of the motion and [accompanying pleading]." Lake Inv'rs Dev. Grp., Inc. v. Egidi Dev. Grp., 715 F.2d 1256, 1258 (7th Cir. 1983).

### III.   DISCUSSION

Intervention is "a procedure by which an outsider with an interest in a lawsuit may come in as a party though the outsider has not been named as a party by the existing litigants." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1901, at 257 (2007). "Rule 24 creates two intervention alternatives, . . . Rule 24(a) governs 'Intervention of Right,' while Rule 24(b) addresses 'Permissive Intervention.'" Alt v. EPA, 758 F.3d 588, 590 n.2 (4th Cir. 2014). The basin associations invoke them both.

####   A.   The basin associations have no right to intervene.

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Plaintiffs contest only the last element.

A would-be intervenor generally bears a "minimal" burden of showing that an existing party inadequately represents its interests, see Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir.1976), but presumptions may arise against such a finding. "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." Id. That presumption strengthens when one seeks to intervene on the side of a government party defending a law of the polity; there, a would-be intervenor "must mount a strong showing of inadequacy." Stuart v. Huff, 706 F.3d 345, 351–52 (4th Cir. 2013).

The strong presumption arises that Defendants adequately represent the basin associations' interests. Both are ultimately concerned that the Court hold that the AEA does not

preempt Va. Code Ann. § 45.1-283. The basin associations principally contend that their interests may diverge from Defendants' on a question of injunctive relief.[2]

Although their respective motions to dismiss oppose injunctive relief, Defendants have not briefed the subject to the same extent, or along the same argument, that the basin associations have. These differences reveal neither nonfeasance nor adversity of interests. Defendants are diligently and zealously defending against the suit, and the Court has no reason to doubt that they are litigating, and will continue to litigate, in good faith and as fully as they deem appropriate. The basin associations' "disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy." See id. at 353.

The basin associations are incorrect insofar as they suggest a potential adversity of interests respecting a possible decision on injunctive relief. At this stage, it seems that, whatever the Court's decision on declaratory relief, the decision on injunctive relief will follow from it. Moreover, the basin associations have no role in implementing Va. Code Ann. § 45.1-283 and, therefore, could be enjoined neither "from complying with Virginia's ban on uranium mining" nor "to accept and process Plaintiffs' applications for . . . permits and licenses . . . ." (Compl. ¶ 111.) It is doubtful that a question of such relief would bring their hardships into issue.

The basin associations hold out In re Sierra Club, 945 F.2d 776, 780 (4th Cir. 1991), as exemplifying a right to intervene on the side of a government party defending a law of the polity. That decision came more than a decade before the Fourth Circuit recognized that a would-be

---

[2] At the hearing, the basin associations observed that Defendants have not objected to intervention and also argued that Defendants do not adequately represent their North Carolina members' interests. First, "consent of the representatives does not entitle one to intervention as a matter of right." Peterson v. United States, 41 F.R.D. 131, 135 (D. Minn. 1966). Second, citizenship might reveal a different reason for desiring the outcome, but it does not suggest that Defendants' pursuit of that outcome inadequately represents the basin associations' interests. Cf. id. at 134 ("[W]hen the interests of applicant and his representative in the outcome of the lawsuit are identical, their interests are not adverse so as to make representation inadequate, even though they may be in conflict in other respects."); cf. also Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Envtl. Conservation, 834 F.2d 60, 61–62 (2d Cir. 1987).

intervenor must make a strong showing to rebut the presumption of such a government party's adequate representation. See Stuart, 706 F.3d at 351–52. In re Sierra Club did not apply this strong presumption, and it is too materially distinct to guide the analysis here.[3]

The basin associations have not shown that Defendants inadequately represent their interests. At bottom, they offer the litigation a local position that merges with Defendants'. The strong presumption of adequate representation withstands.

B. The Court will not permit the basin associations to intervene.

"On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Plaintiffs focus the Court on undue delay or prejudice, the most important consideration in this inquiry. See Hill v. W. Elec. Co., 672 F.2d 381, 386 (4th Cir. 2003).

Weighing the benefits and burdens of a permitted intervention, a court should ensure that the litigation will not "becom[e] unnecessarily complex, unwieldy or prolonged." See United States v. Pitney Bowes, Inc., 25 F.3d 66, 69 (2d Cir. 1994). "[W]here . . . intervention as of right is decided based on the government's adequate representation, the case for permissive intervention diminishes or disappears entirely." Tutein v. Daley, 43 F. Supp. 2d 113, 131 (D. Mass. 1999) (citation omitted). "'Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.'" Bush v. Viterna, 740 F.2d 350, 359 (5th Cir. 1984) (quoting Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc., 51 F. Supp. 972, 973 (D. Mass. 1943)).

---

[3] Further, the basin associations are not involved in a relevant state administrative proceeding, and nothing suggests that Defendants have discretion to differ from the basin associations on a question of Va. Code Ann. § 45.1-283's application in such a proceeding. Cf. In re Sierra Club, 945 F.2d at 780.

The benefit, fairly perceived, from the basin associations' intervention does not justify the burden. Defendants adequately represent the basin associations' interests, and the basin associations' motion to dismiss merges, in substance, with Defendants'. At this stage, it seems that intervention would require additional rounds of responsive briefs, overlapping matters raised in the motions already extensively briefed. The basin associations seem to want, most of all, to share their views,[4] and they can do so as amicus curiae. The scales weigh against intervention.

### IV. CONCLUSION

Defendants adequately represent the interests of the basin associations, which have no right to intervene. Because the accompanying burden outweighs the benefit, I will not permit intervention. I will, however, grant the basin associations leave to file briefs, as amicus curiae, in further proceedings. Should the circumstances later change, such that Defendants do not adequately represent the basin associations' interests, I will grant the basin associations leave to renew their Motion to Intervene.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 19th day of October, 2015.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] The basin associations contend that intervention is appropriate to preserve a right to appeal *if* Defendants choose not to appeal an adverse judgment. Nothing indicates that Defendants would forgo such an appeal. At this stage, accounting for the mere possibility does not justify intervention's accompanying burden.